**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

ALLAN EDUARDO ESTEBAN REYES,

Petitioner,

v.

TODD BLANCHE, *et al*.,

Respondents.

Case No. 2:26-cv-01379-RFB-NJK

**ORDER GRANTING WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Allan Eduardo Esteban Reyes' counseled First Amended 28 U.S.C. § 2241 Petition. See generally First Amended Petition, ECF Nos. 11 (redacted), 13 (sealed) [hereinafter, "Petition" or "Am. Pet."].[1] For the following reasons, the Court grants the Petition and orders Petitioner's immediate release from detention on his own recognizance.

Petitioner challenges the lawfulness of his ongoing detention at Henderson Detention Center in the custody of Immigration and Customs Enforcement ("ICE"). Federal Respondents (also referred to herein as "the government") are detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A), a provision of the Immigration and Nationality Act ("INA") that generally[2] mandates detention without the possibility of release on bond or parole during the pendency of a noncitizen's removal proceedings. See generally Federal Respondents' Response to

---

[1] Petitioner filed a *pro se* Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 after the Court issued a briefing schedule on his counseled first amended petition. See ECF No. 17. Petitioner did not have leave of Court to file a *pro se* petition. Because Petitioner has counsel, the Court disregards his *pro se* petition, and it will direct the Clerk of Court to strike that fugitive pleading to ensure a clear record.

[2] Noncitizens detained under § 1225(b) "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit'" at the arresting ICE officer's discretion. Jacobo-Ramirez v. Mullin, No. 2:25-CV-02136-RFB-MDC, 2026 WL 879799, at *8 (D. Nev. Mar. 30, 2026) (citing Jennings v. Rodriguez, 583 U.S. 281, 288 (2018) (citing 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5)).

Petitioner's Verified Amended Petition, ECF No. 16 [hereinafter, "Return"]. Petitioner asserts that his detention pursuant to § 1225(b)(2)(A) violates the INA and the Due Process Clause of the Fifth Amendment, because he is properly detained pursuant to § 1226(a), and his arrest and detention without required procedures violates his right to due process. See Am. Pet. at 6–12.

The government invokes its novel statutory interpretation of § 1225(b)(2)(A) as the basis for Petitioner's detention. See generally Return. It does not assert any individualized justification but insists that Petitioner's detention is mandated by statute regardless of his individual circumstances. See id. On March 30, 2026, this Court issued a classwide judgment declaring the government's interpretation of § 1225(b)(2)(A) unlawful under the INA, because undocumented noncitizens like Petitioner, who are arrested by ICE officers in the interior of the country and alleged to have entered without inspection or parole, are subject to detention under 8 U.S.C. § 1226(a) and its implementing regulations, 8 C.F.R. §§ 236.1, 1236.1, and 1003.19. See Jacobo-Ramirez v. Mullin, No. 2:25-CV-02136-RFB-MDC, 2026 WL 879799, at * 33 (D. Nev. Mar. 30, 2026). Pursuant to § 706(2)(A) of the Administrative Procedures Act ("APA"), the Court further set aside (i.e. vacated) the government's mass immigration detention policies under § 1225(b)(2)(A), which were encapsulated in an internal ICE Memo and the Board of Immigration Appeals (BIA) decision in Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025) [hereinafter, Hurtado]. See id.

As discussed below, and as the government concedes, Petitioner is a member of the Jacobo-Ramirez Class. Therefore, his arrest and ongoing detention under § 1225(b)(2)(A) is unlawful and violates this Court's declaratory judgment and APA vacatur. Further, the Court finds that Petitioner's arrest and ongoing detention without the procedural protections provided under § 1226(a) violates his constitutional right to due process. Finally, the Court finds the appropriate remedy in this case is Petitioner's immediate release from custody on personal recognizance.

## I.   CLASS MEMBERSHIP

The Court finds that Petitioner is a member of the Jacobo Ramirez Class, which is defined as:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

Jacobo-Ramirez, at *4, n.2 [hereinafter "Class Members"].

The government concedes that Petitioner is a Class Member. See Return at 1, ECF No. 16. Based on the undisputed verified factual allegations in the Petition, and the documentary evidence supplied by the parties, the Court finds that Petitioner satisfies the criteria for Jacobo Ramirez Class Membership. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (describing the factfinding process in habeas corpus proceedings).

First, Petitioner is an undocumented noncitizen who was arrested and detained by ICE on January 27, 2026, and he remains detained. Compare Am. Pet. at 2, ECF No.11, with Response, Ex. A at 3, ECF No. 10 (DHS Form I-213 Record of Inadmissible Noncitizen, ECF No. 10-1 at 2–5 [hereinafter "I-213"]). Second, he is in removal proceedings before the Las Vegas Immigration Court, which is within the District of Nevada. See Response, Ex. A at 6 (DHS Form I-862 Notice to Appear) [hereinafter "NTA"] (Alleging that Petitioner is "an alien present in the United States who has not been admitted or paroled."). Third, the Department of Homeland Security ("DHS") alleges that Petitioner entered the United States without inspection, admission, or parole. See Response, Ex. A at 6 (DHS Form I-862 Notice to Appear) [hereinafter "NTA"], ECF No. 10-1 at 6 (Alleging that Petitioner is "an alien present in the United States who has not been admitted or paroled."). Fourth, Federal Respondents are detaining Petitioner pursuant to § 1225(b)(2)(A) and they do not assert that Petitioner is or will be subject to detention under §§ 1226(c), 1225(b)(1), or 1231. See generally, Return. Fifth, Petitioner was most recently arrested well within the country's interior, not while he was arriving in the United States. See Am. Pet. at 4–5; Response, Ex. A at 3 (I-213).

In sum, Petitioner is clearly a Jacobo Ramirez Class Member entitled to enforcement of the relief afforded to the Class by this Court. Cf. Navarro v. Mukasey, 518 F.3d 729, 737 (9th Cir.

2008) ("They are, accordingly, class members eligible for relief."). The declaratory judgment entered in favor of Jacobo Ramirez Class Members has "the force and effect of a final judgment or decree." 28 U.S.C. § 2201. In other words, "a declaratory judgment is a real judgment, not just a bit of friendly advice." Badger Cath., Inc. v. Walsh, 620 F.3d 775, 782 (7th Cir. 2010). Thus, Respondents, as parties to Jacobo Ramirez, are obligated to comply. See, e.g., Maness v. Meyers, 419 U.S. 449, 458 (1975) ("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly."); United Aeronautical Corp. v. United States Air Force, 80 F.4th 1017, 1031 (9th Cir. 2023) ("But in suits against government officials and departments, we generally assume that they will comply with declaratory judgments.").

Respondents offer no explanation for their continued reliance on § 1225(b)(2)(A) to detain Petitioner despite this Court's binding Judgment, and their noncompliance has necessitated this habeas proceeding. See Haaland v. Brackeen, 599 U.S. 255, 293 (2023) ("After all, the point of a declaratory judgment is to establish a binding adjudication that enables the parties to enjoy the benefits of reliance and repose secured by res judicata.") (internal quotation marks omitted), id. ("This form of relief conclusively resolves the legal rights of the parties.") (internal quotation marks omitted). Thus, in the face of the government's noncompliance, the Court must reiterate its finding that Petitioner's ongoing detention is unlawful under the INA, because his detention is governed by § 1226(a) and its implementing regulations. See Jacobo Ramirez, 2026 WL 879799, at *33.

## II.   DUE PROCESS

The Court has previously clarified that Class Members and similarly situated noncitizens are entitled to due process under the Constitution. See, e.g., Escobar Salgado v. Mattos, 809 F. Supp. 3d. 1123, 1158–60 (D. Nev. 2025); Jacobo Ramirez v. Noem, 817 F. Supp. 3d. 1037, 1053–54 (D. Nev. 2025). The Court incorporates these holdings, and their underlying reasoning, in this case. The Court reiterates this country's longstanding, fundamental guarantee that noncitizens "who have once passed through our gates, *even illegally*, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." Shaughnessy

- 4 -

v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953) (emphasis added). Noncitizens who have entered our country are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Id. at 690. Consequently, the government may not deny "notice" or "an opportunity to be heard" to a noncitizen "who has entered the country, and has become subject in all respects to its jurisdiction, and a part of its population, although alleged to be illegally here." Yamataya v. Fisher, 189 U.S. 86, 100–01 (1903).

Section 1226(a) and its regulations guarantee noncitizens detained under that provision multiple levels of "substantial procedural protections" against the erroneous deprivation of their liberty. See Jacobo-Ramirez, 2026 WL 879799, at *6 (quoting Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022)). These protections include, *inter alia*: the requirement that a noncitizen cannot be arrested without an administrative warrant or detained without notice of the basis for their detention through a notice to appear, both of which must be signed and served by designated immigration officers, see id. (citing 8 C.F.R. §§ 236.1; 287.5(d); 287.8(c)(2)(i)–(ii)); the requirement that an immigration officer, with appropriate authority, conduct an initial custody determination at the outset of detention, wherein the noncitizen has an opportunity to "'demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding,'" see id., (quoting Rodriguez Diaz, 53 4th at 1196) (citing 8 C.F.R. § 236.1(c)(8)); and the right to seek review of an ICE officer's initial custody determination through a prompt bond hearing before an immigration judge (IJ) based on individualized evidence, wherein the IJ will order release on bond if the noncitizen establishes that they are not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." See id. at 6–7 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19; Rodriguez Diaz, 53 F.4th at 1196 (citation modified)).

The government's novel mass detention policies under § 1225(b)(2)(A) require no comparable procedures to ensure its detention authority respects constitutional limits. Lopez-Campos v. Raycraft, 175 F.4th 713, 732 (6th Cir. 2026) ("[T]he government's ability to detain

noncitizens is not limitless. It should effectuate two regulatory goals: (1) ensuring the appearance of noncitizens at future immigration proceedings and (2) preventing danger to the community.") (citing Zadvydas, 533 U.S. at 690)). As a result, noncitizens like Petitioner are indiscriminately arrested by ICE officers in the interior of the country and subjected to months of detention without procedures to ensure the government considers—let alone substantiates—whether it has a constitutionally recognized interest in depriving the detainee of their liberty.

Indeed, ICE's § 1225(b)(2)(A) detention policy, as evidenced by the July 8th, 2025 Memo issued by Acting ICE Director Todd Lyons, specifically instructs ICE agents against issuing any "Form I-286, Notice of Custody Determination" to noncitizens like Petitioner, because individual custody determinations are only required under § 1226. See Jacobo-Ramirez, 2026 WL 879799, at *8 (citing 8 C.F.R. § 236.1(c)(8)). This Court vacated that policy on March 30th, see id. at *33, yet as Petitioner's circumstances illustrate, the government is still detaining Class Members without any consideration of their dangerousness or risk of absconding from removal proceedings. But the government has "no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017); see also Barbosa da Cunha v. Freden, 175 F.4th 61, 94 (2d Cir. 2026) ("While noncitizens can be detained temporarily to 'give[ ] immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity,' that is not what is going on here, where detention is mandatory regardless of these risks.") (quoting Jennings v. Rodriguez, 583 U.S. 281, 286 (2018)).

Considering the above, this Court found the government's expansion of § 1225(b)(2)(A) to apply to millions of undocumented noncitizens living in the United States, many of whom, like Petitioner, are "neighbors, spouses, mothers, fathers, and grandparents of American citizens," see Jacobo-Ramirez, 2026 WL 879799, at *2, raises serious constitutional concerns. See id. at *26–29 (discussing the due process and Fourth Amendment concerns raised by the government's application of § 1225(b)(2)(A) to Class Members); see also Barbosa da Cunha, 175 F.4th at 94–96 (finding the government's interpretation raised due process concerns including that it "would

likely subject" noncitizens "to unconstitutionally prolonged detention" "compounded by the fact that noncitizens have no right to counsel and are therefore often unrepresented in removal proceedings" and thus "lack the ability to reliably challenge their detention or the conditions in which they are being held"). These constitutional concerns are Petitioner's current reality.

As such, this Court finds that Petitioner is entitled to the procedural protections provided by § 1226(a), not merely by statute and regulation, but also by the Due Process Clause. The procedural protections required under § 1226(a) encompass pre-deprivation notice of the individualized basis for ICE's decision to detain a noncitizen, "subject to numerous levels of review, each offering [the detainee] the opportunity to be heard by a neutral decisionmaker," Rodriguez Diaz, 53 F.4th at 1210. As illustrated below, Petitioner's arrest and detention without those protections violates his right to procedural due process. Likewise, the government's failure to articulate a constitutionally recognized interest in detaining Petitioner, including in these habeas proceedings, violates Petitioner's right to substantive due process. See Zadvydas, 533 U.S. at 690.

**A. Procedural Due Process**

To determine what process is due under the Constitution, courts apply the three-part balancing test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976), to analyze and balance both the private and governmental interests affected. See Rodriguez Diaz, 53 F.4th at 1203–1207 (collecting cases and finding the Mathews test appropriate in the context of immigration detention). Specifically, courts weigh the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail." Mathews, 424 U.S. at 335 (citation omitted).

On balance, these factors weigh heavily in favor of Petitioner. First, Petitioner has a paramount interest in his physical liberty. That interest is especially weighty considering the process he has received, and that was available to him, upon his arrest and throughout his detention—that is, in terms of the government's custody determination, no process at all. See

Rodriguez Diaz, 53 F.th at 1208 (considering the process the immigration detainee had already received during his detention pursuant to § 1226(a) and the further process that was available to him in weighing his private liberty interest).

Second, the risk of an erroneous deprivation of liberty is extraordinarily high under the government's current procedures (or absence thereof), which do not require any individualized determination that Petitioner's detention serves its constitutionally recognized regulatory goals. Nor is Petitioner provided with timely notice and an opportunity to challenge the government's basis for his arrest and detention under § 1225(b)(2)(A), as, for example, based on a mistake of fact, in contrast to procedural protections available under other mandatory detention provisions of the INA that apply to noncitizens (like Petitioner) who are arrested within the interior of the country and not while arriving[3] at its borders. See, e.g., Demore v. Kim, 538 U.S. 510, 514 n.3 (2003) (describing the availability of a "Joseph hearing" which is "immediately provided to a detainee who claims that he is not covered by § 1226(c)" where "the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that [the agency] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention") (citing 8 C.F.R. § 3.19(h)(2)(ii) (2002); Matter of Joseph, 22 I.&N. Dec. 799 (BIA 1999)).

In contrast, longstanding procedures, which the government has only recently abandoned after thirty years of consistent prior practice, require an administrative warrant, a determination by ICE that Petitioner's detention is justified based on his individual circumstances, written notice of that determination, and a prompt opportunity to be heard by a neutral decisionmaker regarding ICE's determination, subject to multiple levels of administrative and judicial review. See Jacobo-Ramirez, 2026 WL 879799, at *29–31; see also Rodriguez Diaz, 53 F.4th at 1210. These alternate procedures significantly reduce the risk of erroneous deprivation.

Third, the government's interest in enforcing immigration law and presumed interest in

---

[3] ICE's arrest and detention policy under § 1225(b)(2)(A) specifically instructs arresting ICE officers to treat noncitizens like Petitioner "in the same manner that 'arriving aliens' have historically been treated." See Jacobo-Ramirez, 2026 WL 879799, at *8 (quoting the July 8, 2025 internal ICE Memo).

detaining noncitizens who are dangerous, or a flight risk, are served, and not unduly burdened, by the longstanding procedural protections provided to noncitizens like Petitioner to ensure they are indeed a danger to the community or at risk of absconding. See Escobar Salgado, 809 F. Supp. 3d. at 1160–62. Moreover, the additional procedural requirements afforded under § 1226(a) serve to *reduce* the fiscal and administrative burden of civil immigration detention. See Jacobo-Ramirez, 2026 WL 879799, at *30 ("Recent estimates by the federal government find that supervised release programs such as those available under § 1226 cost less than $4.20 each day per participant, compared with detention costs of $152 per day.") (citation omitted) (emphasis added).

**B. Substantive Due Process**

Substantive due process protects individuals from government action that interferes with fundamental rights. See Regino v. Staley, 133 F.4th 951, 959–60 (9th Cir. 2025). "Governmental action that infringes a fundamental right is constitutional only if 'the infringement is narrowly tailored to serve a compelling state interest.'" Id. at 960 (citing Reno, 507 U.S. at 302). Civil immigration detention violates a noncitizen's substantive due process rights except in certain "special and narrow nonpunitive circumstances where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas, 533 U.S. at 690 (citation modified) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992); and Kansas v. Hendricks, 521 U.S. 346, 356 (1997)).

To date, the government has not asserted an individualized justification—let alone a special or compelling justification—for depriving Petitioner of his freedom. Thus, the Court finds that his detention violates substantive due process. Cf. Escobar Salgado, 809 F. Supp. 3d. at 1162 (elaborating on this same analysis and reaching the same conclusion).

For the foregoing reasons, the Court has little difficulty concluding that Petitioner's detention violates procedural and substantive due process and is, therefore, unconstitutional.

**III.   REMEDY**

Based on the record before it, the Court finds that Petitioner has been subjected to arbitrary detention in violation of his statutory and constitutional rights, as well as this Court's classwide

Judgment. The Court's task then is to determine the appropriate remedy for these violations. See Sanders v. Ratelle, 21 F.3d 1446, 1461 (9th Cir. 1994) ("A federal court is vested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus. The court is free to fashion the remedy as law and justice require[.]") (citation modified). For the following reasons, the Court finds that immediate release is the appropriate equitable remedy in this case.

Despite being ordered to do so by this Court, Federal Respondents failed to produce a Form I-286 Initial Custody Determination or Form I-200 Administrative Warrant as to Petitioner, or in the alternative, certify that such documents are not in their possession, custody, or control. Compare Order Appointing Counsel at 3, ECF No. 5, and Show Cause Order, ECF No. 15, with Response, ECF No. 16. The Court finds the government's failure to produce evidence of a lawfully executed and served administrative warrant or individualized pre-deprivation custody determination without so much as an acknowledgement or explanation, in the face of the Court's Order, is a concession that no such records exists as to Petitioner, and he was not afforded procedures required by the INA and this Court's classwide judgment. See Jacobo Ramirez, 2026 WL 879799, at *31 ("The Court issues a classwide declaratory judgment that Class Members are subject to detention under § 1226(a) and its implementing regulations. Defendants must therefore comply with 8 C.F.R. §§ 236.1(b); 236.1(c)(8) in arresting and detaining any Class Member. If Defendants deny release on bond or conditional parole after an initial custody determination, Class Members are entitled to custody redetermination(s) before an immigration judge upon request consistent with 8 C.F.R. §§ 236.1(d); 1003.19.").

On that basis, the Court finds that Petitioner's detention was void *ab initio*, as he was "detained . . . under the wrong statute and without any notice or opportunity to be heard, much less the procedures required under Section 1226(a)." Rodriguez-Acurio v. Almodovar, No. 2:25-CV-06065 (NJC), 2025 WL 3314420, at *31 (E.D.N.Y. Nov. 28, 2025) (ordering a noncitizen's release on this basis because "a bond determination by a DHS officer or an immigration judge would not remedy the core constitutional violation at issue here" where the noncitizen's detention was unlawful from its inception); see also Djiwaje v. Bondi, No. 2:26-CV-00344-RFB-MDC, 2026

WL 926753, at *3–4 (D. Nev. Apr. 6, 2026) (Finding "the legal authority to arrest and detain a noncitizen under § 1226(a) derives entirely from the I-200 [administrative warrant]'s compliance with governing regulations[,] and in the absence of a showing that the warrantless arrest exception under 8 U.S.C. § 1357(a)(2) applied at the time of the noncitizen's arrest, the petitioner's seizure was unlawful such that release was the appropriate remedy) (citations omitted).

Second, the Court considers Federal Respondents' continued enforcement of detention policies that it has found, in a binding judgment, to be unlawful. This Court issued its declaratory judgment on March 30, 2026, and vacated ICE's internal policy of not issuing initial custody determinations to noncitizens like Petitioner and the BIA's decision in Hurtado. See Jacobo-Ramirez, 2026 WL 879799, at *33. The declaratory judgment specifically states that Class Members are "entitled to consideration for release from detention on bond and/or conditions" consistent with 8 C.F.R. §§ 236.1(c)(8), (d); 1236.1(c)(8); (d). Id. ("Class Members are subject to detention under 8 U.S.C. § 1226(a) and its implementing regulations 8 C.F.R. §§ 236.1, 1236.1 & 1003.19."). Petitioner, who the government concedes is a Class Member, was arrested without an initial custody determination pursuant to ICE's now vacated policy. See Am. Pet. at 4. Over five months have passed since Petitioner's arrest, and two and a half months since the Jacobo Ramirez Judgment, yet ICE has not conducted an initial custody determination for Petitioner. In other words, faced with a final judgment that (1) declared Petitioner's detention was and continues to be illegal and (2) vacated the agency policies underlying Petitioner's arrest and detention, the government has taken no action to cure its unlawful conduct by providing him with an initial custody determination.

In fact, Federal Respondents have confirmed, in Jacobo Ramirez, that they are not conducting initial custody determinations or issuing Form I-286 Notices to *any* Class Members, even though they acknowledge the declaratory judgment and vacatur entitles Class Members to those procedures. See Jacobo Ramirez, No. 2:25-CV-02136-RFB-MDC, ECF No. 150 (June 1, 2026 Minutes of Proceedings); see also id., June 1, 2026 Hr'g. Tr. at 17–20, ECF No. 157. The Form I-286 Notice of Custody Determination is especially significant because it is required to be served on the detainee at the outset of detention and includes the mechanism—a box the detainee

may check—by which the detainee requests a custody *redetermination* hearing before an immigration judge. See id. at 18–20. By declining to issue the I-286 Forms, Federal Respondents are continuing to enforce the very internal ICE policy this Court vacated and importantly depriving Class Members like Petitioner of the ability to promptly and efficiently request a bond hearing before an immigration judge.

To date, Federal Respondents' only stated justification for not complying with the Jacobo Ramirez Judgment is that "they need not comply with the declaratory judgment or vacatur because neither are coercive forms of relief." See id., June 15, 2026 Minutes of Proceedings, ECF No. 162. Federal Respondents do not contend that their continued enforcement of the vacated policy is lawful. Instead, they take the position that, absent classwide *coercive* enforcement, they are not obligated to conform their conduct to this Court's Judgment. Thus, in this and countless other habeas matters filed by Jacobo Ramirez Class Members, the government, which has yet to file an appeal in Jacobo Ramirez, is unsettling the longstanding assumption that Executive Branch officials and departments will comply with a declaratory judgment unless and until it is stayed or vacated. See United Aeronautical Corp. v. United States Air Force, 80 F.4th 1017, 1031 (9th Cir. 2023). Despite the longstanding *expectation* that the Executive Branch will respect a declaration of law by an Article III Court, it is true that a declaratory judgment *establishes* Petitioner's rights but, standing alone, is not a self-executing command. See Steffel v. Thompson, 415 U.S. 452, 471 (1974) (explaining that a declaratory judgment "is not ultimately coercive; noncompliance with it may be inappropriate, but it is not contempt."). Similarly, the Court's APA § 706 set aside (*i.e.* vacatur) "does not affect the Government's future actions" and "neither compels nor restrains further agency decision-making." Nat'l TPS All. v. Noem, 166 F.4th 739, 760 (9th Cir. 2026) (citation modified).

Federal Respondents have made clear that they will not conform their conduct to the Jacobo Ramirez declaratory judgment and APA vacatur remedies voluntarily. The consequence is not that the lawfulness of Petitioner's detention is uncertain—this Court has already adjudicated it—but that Petitioner requires an appropriate remedy in this habeas proceeding to give effect to his rights as a Class Member. Unlike the declaratory judgment, an order of this Court directing Petitioner's

- 12 -

release is enforceable by the Court's contempt power.

Petitioner's circumstances are not isolated. Federal Respondents have engaged in a pattern of noncompliance with this Court's Orders in related matters—including, *inter alia*, removing petitioners from the District of Nevada, failing to release petitioners as ordered, disregarding deadlines, failing to provide constitutionally adequate bond hearings, and imposing unlawful release conditions. See Jimenez Gomez v. Dep't of Homeland Sec., No. 2:26-cv-00922-RFB-DJA, 2026 WL 1164736, at \*2–3 (D. Nev. Apr. 29, 2026) (collecting examples).[4] By violating this Court's orders Federal Respondents undermine "their credibility and the rule of law," and their conduct "causes unnecessary trauma and harm to petitioners." Id.

While ordering a prompt bond hearing may be an appropriate habeas remedy in some cases, under these circumstances the Court declines to keep Petitioner detained. Having already refused to honor this Court's Judgment, Federal Respondents cannot be trusted with the further opportunity to violate Court orders and due process that a bond hearing would provide. Ordering a bond hearing

---

[4] Since the Court's decision in Jimenez Gomez, the Court has become aware of numerous other instances of Federal Respondents violating its explicit orders. See, e.g., Sira v. Bondi, Case No. 2:26-CV-00828-RFB-DJA, ECF No. 8 (D. Nev. Apr. 21, 2026) (finding the government transferred petitioner out of the district in violation of court order and ordering return); Cortez Diaz v. Blanche, 2:26-CV-01056, ECF No. 10 (D. Nev. Apr. 29, 2026) (same); Yanes-Quijada v. Mattos, Case No. 2:26-CV-01221-RFB-NJK, ECF No. 16 (D. Nev. May 7, 2026) (finding the government failed to certify a lawful basis for a Class Member's detention in response to an order to show cause, failed to produce documents or certify they do not exist, etc., and ordering Petitioner's immediate release "given the egregious nature of his unjustified detention"); Garcia Diaz v. Mattos, No. 2:26-CV-00926-RFB-BNW, 2026 WL 1270816 (D. Nev. May 9, 2026) (finding the petitioner remained in detention in violation of the Court's Order and equitably estopping ICE from taking fundamentally inconsistent positions in federal habeas proceedings and immigration court); Cruz Perez v. Bondi, No. 2:26-CV-00316-RFB-DJA, ECF No. 31 (D. Nev. May 15, 2026) (finding the IJ failed to apply the appropriate evidentiary burden at a court-ordered bond hearing in violation of the Court's conditional writ, and ICE unilaterally imposed surveillance monitoring in violation of agency regulations and due process); Malta De Sa v. Mullin, No. 2:26-CV-00594-RFB-MDC, ECF No. 25 (D. Nev. May 19, 2026) (finding DHS and ICE unilaterally imposed burdensome release conditions on the petitioner in violation of the Court's explicit order prohibiting them from doing so); Alfaro Cruz v. Bernacke, No. 2:26-CV-00080-RFB-BNW, 2026 WL 1414096 (D. Nev. May 20, 2026) (finding Federal Respondents obviously failed to comply with the Court's conditional writ requiring a constitutionally adequate bond hearing and enforcing the Writ by ordering the petitioner's release); Bibiano v. Blanche, 2:26-CV-00927-RFB-BNW, ECF No. 19 (D. Nev. May 21, 2026) (the government failed to provide notice of the petitioner's release despite ICE being given 24 hours to release him; petitioner could not be located after his release); Changyi v. Leyva, 2:26-CV-01280-RFB-MDC, ECF No. 21 (D. Nev. June 6, 2026) (petitioner was held in detention for an additional three days, despite having been granted bond and ordered immediately released by the immigration judge). This list is far from exhaustive.

would also unjustly prolong Petitioner's unlawful detention, inadequately remedy the harms he has already suffered and "effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications." Zheng v. Rokosky, No. 26-CV-01689, 2026 WL 800203, at *11 (D.N.J. Mar. 23, 2026); see also, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, Case No. 25-CV-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner[ ] received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). The Court thus finds "the typical remedy" for "unlawful executive detention"—immediate release from custody—is appropriate here. Munaf v. Geren, 553 U.S. 674, 693 (2008).

Additionally, the Court finds that it must adopt equitable remedies to ensure that Federal Respondents abide by due process moving forward in the event they seek Petitioner's re-detention pursuant to § 1226(a). Cf. U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings). Here, the Court finds it appropriate to order if Federal Respondents seek Petitioner's re-detention under § 1226(a), they must provide him with *a pre-deprivation* bond hearing wherein the government must prove, by clear and convincing evidence, that detention is appropriate. See Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024) (reviewing the immigration court and BIA's compliance with a district court's habeas order that the government provide an immigration detainee with a bond hearing "under the Due Process Clause," which required "the government to show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community at the time of the bond hearing") (citing Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011)). While the Court does not take this step lightly, it finds it is necessary because of the egregious violations of law and Petitioner's rights perpetrated by Federal Respondents to date.

## IV.   CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Petitioner's First Amended Petition for Writ of Habeas Corpus (ECF Nos. 11 (redacted), 13 (sealed)) is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents must **RELEASE** Petitioner from detention **ON HIS OWN RECOGNIZANCE**, **TOMORROW** June 23, 2026 between **12-3 p.m.** This means that Respondents are **PROHIBITED** from imposing release conditions that substantially interfere with Petitioner's liberty, such as electronic monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing.

**IT IS FURTHER ORDERED** that Respondents must return Petitioner's personal property, including any personal identification and employment authorization documents, **UPON HIS RELEASE.**

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that Respondents may not re-detain Petitioner during the pendency of his current removal proceedings until after an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate under 8 U.S.C. § 1226(a) and its implementing regulations. At this hearing, the government must bear the burden of establishing that detention is appropriate by clear and convincing evidence.

**IT IS FURTHER ORDERED** that the Parties must file a **JOINT STATUS REPORT** by **June 24, 2026** confirming Respondents' compliance with this Order including (i) the date and time of Petitioner's release; (ii) compliance with this Court's directives concerning release on personal recognizance; and (iii) the return of Petitioner's personal property.

///

///

///

///

///

**The Clerk of Court is kindly instructed to strike Petitioner's fugitive *pro se* Amended Petition (ECF No. 17) from the docket, enter judgment accordingly, and close this case**. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case.

**DATED:** June 22, 2026.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**